

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

FREDERICK W. THORNTON,   )
                         )
          Appellant,     )          WD76734
                         )
vs.                      )          Opinion filed:  December 2, 2014
                         )
STATE OF MISSOURI,       )
                         )
          Respondent.    )

## APPEAL FROM THE CIRCUIT COURT OF DEKALB COUNTY, MISSOURI
## THE HONORABLE THOMAS NICHOLS CHAPMAN, JUDGE

Before Division Special Division:  Zel Fischer, Special Judge Presiding,
Joseph M. Ellis, Judge and Victor C. Howard, Judge

Frederick Thornton appeals from the judgment of the motion court denying his Rule 24.035 motion for postconviction relief following an evidentiary hearing.  Thornton pleaded guilty to second degree felony murder and driving while intoxicated as an aggravated offender pursuant to a plea agreement with the prosecutor, and he was sentenced to a longer sentence than the prosecutor had recommended.  Thornton sought to vacate his convictions and sentences arguing that plea counsel was ineffective for affirmatively misadvising him that he would not receive a sentence longer than the prosecutor's recommendation and that if he did, he could withdraw his guilty plea.  He raises six points on appeal challenging the motion court's denial of his motion.  The judgment is affirmed.

## Background

In September 2011, Thornton was charged by first amended information with second-degree felony murder, armed criminal action, driving while intoxicated-aggravated offender, and leaving the scene of an accident. Thornton pleaded guilty to felony murder and DWI-aggravated offender pursuant to a plea agreement in which the prosecutor agreed to *nolle prosequi* the charges of armed criminal action and leaving the scene of a motor vehicle accident and to recommend a cap of punishment at 20 years for felony murder and 5 or 6 years for DWI-aggravated offender.

At the plea hearing, Thornton admitted the following factual basis for the plea. On January 28, 2011, Thornton was driving his truck in Cameron while intoxicated when he ran a red light at an intersection and collided with the vehicle driven by Laura Fisher. Ms. Fisher died as a result of the crash. Thornton fled the scene but was quickly apprehended. A breathalyzer test showed Thornton's blood alcohol content was .215. Thornton had three previous driving while intoxicated convictions, the latest for which he was on probation at the time of the accident.

Thornton expressed his understanding of his numerous rights and his waiver of them. He testified that he felt he had been treated fairly by law enforcement and that he had no complaints about his attorney's representation of him. He further stated that he had not been threatened or coerced to plead guilty and had not been promised anything other than the State's recommendation. Thornton then expressed his understanding of the range of punishment:

THE COURT: What are the range of penalties on each count, [Prosecutor]?

PROSECUTOR: Your Honor, on Count 1 [felony murder] it's up to life which is imputed at 30 years; and then on Count 3 [DWI-aggravated offender] it's up to 7 years in the Department of Corrections, up to 1 year in the county jail, up to $5000 fine or any combination of incarceration and fine.

THE COURT: Is that your understanding, [Defense Counsel]?

DEFENSE COUNSEL: Yes, sir.

THE COURT: All right. Mr. Thornton, do you understand that is the range of penalties?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that those can be run consecutive?

THE DEFENDANT: Yes, sir.

THE COURT: And have you discussed all of that, those prison terms could be run consecutively, have you discussed all that with your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: And you fully understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have any questions about that?

THE DEFENDANT: No, sir.

Thornton offered into evidence a petition to enter plea of guilty in which he stated the factual basis for his plea, "I drove while intoxicated, causing the death of Laura Fisher." Paragraph 19 of the petition read:

> I OFFER MY PLEA OF GUILTY FREELY AND VOLUNTARILY AND OF MY OWN ACCORD AND WITH FULL UNDERSTANDING OF ALL THE MATTERS SET FORTH IN THE INFORMATION AND IN THIS PETITION, AND I FURTHER UNDERSTAND THE COURT DOES NOT HAVE TO ACCEPT THE RECOMMENDATION OF THE PROSECUTING ATTORNEY, AND THAT THE COURT MAY ASSESS A PUNISHMENT GREATER OR LESSER THAN THAT RECOMMENDATION BY THE PROSECUTING ATTORNEY.

Paragraph 8 read, "I know if I plead GUILTY, there will be no trial either before a Court or jury, and the Court may impose the same punishment as if I had pleaded NOT GUILTY, stood trial

and had been convicted by a jury." Thornton testified that he signed each page of the petition indicating that he understood everything on each page and that he understood the petition's terms entirely.

The following colloquy then occurred regarding the nature of the plea agreement and Thornton's inability to withdraw his plea:

> THE COURT: Do you understand that if the Court accepts the plea here today that this would forever and finally determine your guilt of this felony offense and you could not come back if you decide this was an unwise decision and withdraw your plea?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: You understand that if the Court accepts your plea of guilty here today that you will not be able to withdraw your plea if the Court does not follow the recommendation of the State. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you further understand the Court has available to it the full range of punishment up to and including life on Count 1, and 7 years on…Count 3…and those could be consecutive; do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And that if you're given more punishment than the recommendation you could not withdraw your plea; do you understand that?
>
> THE DEFENDANT: Yes, sir.

The plea court found that Thornton's pleas of guilty were made freely and voluntarily with an understanding of the rights he was waiving, that a factual basis for the pleas existed, and that Thornton was guilty of second-degree felony murder and DWI-aggravated offender.

At sentencing, the defense asked for a 10-year sentence for felony murder with a consecutive term of 5 years for the DWI. It also requested concurrent sentencing with the previous DWI sentence (4 years) that would be executed as a result of the probation violation.

4

Pursuant to the plea agreement, the prosecutor requested a 20-year sentence for the felony murder, 5 years for the DWI, and that all of the sentences including the previous DWI sentence be run consecutively for a total of 29 years. The prosecutor also dismissed the armed criminal action and leaving the scene of an accident counts.

The court sentenced Thornton to 25 years in prison for felony murder and 5 years in prison for DWI-aggravated offender. It revoked Thornton's probation and executed the 4-year sentence for the previous DWI and ordered all of the sentences to run consecutively.

Thereafter, Thornton filed a pro se Rule 24.035 motion for postconviction relief. Appointed counsel filed an amended motion on Thornton's behalf that alleged, in part, that defense counsel was ineffective in affirmatively misadvising him that there was a 20-year lid on the second-degree murder charge and that he could withdraw his guilty plea if the court sentenced him in excess of the 20-year lid. The motion further alleged that but for these affirmative misrepresentations, Thornton would not have pleaded guilty and would have gone to trial.

An evidentiary hearing was held on Thornton's motion. Defense counsel testified that he told Thornton that there was a cap of 20 years for the felony murder and a cap of 6 years for DWI and that he could not get sentenced for more than 26 years. Thornton testified that defense counsel told him that there was a cap of 20 years for the murder charge and that if the court sentenced him to more than 20 years on that charge, he could withdraw his plea. He further stated that if had he known that the court could sentence him to more than 20 years for felony murder, he would not have pleaded guilty and would have elected to go to trial.

The motion court issued its judgment denying Thornton's Rule 24.035 motion. It found that regardless of what plea counsel advised him, Thornton was not prejudiced by counsel's

advice because at the plea hearing, Thornton understood that the court could impose sentences exceeding the prosecutor's recommendation and that he would not be able to withdraw his pleas if the court sentenced him in excess of the recommendation.

This appeal by Thornton followed.

## Standard of Review

Appellate review of the denial of a Rule 24.035 motion for postconviction relief is limited to the determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 24.035(k); *Stanley v. State*, 420 S.W.3d 532, 539 (Mo. banc 2014). "The motion court's findings and conclusions are clearly erroneous only if, after review of the record, the appellate court is left with the definite and firm impression that a mistake has been made." *Stanley*, 420 S.W.3d at 539 (internal quotes and citation omitted). "Movant has the burden to show by a preponderance of the evidence that the motion court clearly erred in its ruling." *Id.* (internal quotes and citation omitted).

## Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, a movant must satisfy a two-prong test. *Taylor v. State*, 403 S.W.3d 683, 686 (Mo. App. W.D. 2013). He must show that (1) counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances and (2) he was prejudiced thereby. *Id.*; *See also Strickland v. Washington*, 466 U.S. 668, 687 (1984). If the movant fails to satisfy either the performance prong or the prejudice prong of the test, the appellate court need not consider the other, and the claim of ineffective assistance of counsel must fail. *Taylor*, 403 S.W.3d at 686 (citing *Strickland*, 466 U.S. at 687).

If a conviction is entered based on a guilty plea, however, any claim for ineffective assistance of counsel is immaterial except to the extent that it impinges upon the voluntariness and knowledge with which the plea was made. *Stanley*, 420 S.W.3d at 548. "Mistaken beliefs about sentencing affect a defendant's ability to knowingly enter a guilty plea if the mistake is reasonable and the mistake is based upon a positive representation upon which [he] is entitled to rely." *Dobbins v. State*, 187 S.W.3d 865, 866 (Mo. banc 2006). "If a defendant is misled or induced to enter a plea of guilty by fraud, mistake, misapprehension, coercion, duress or fear, then the defendant should be permitted to withdraw the plea." *Id.* at 867. To satisfy the prejudice requirement following a guilty plea, a movant must show that, but for counsel's errors, he would not have pleaded guilty and would have insisted on a trial. *Stanley*, 420 S.W.3d at 548. "To obtain an evidentiary hearing on a Rule 24.035 motion, the movant must (1) allege facts, not conclusions, warranting relief, (2) raising matters not refuted by the files and the record, and (3) showing that the matters raised resulted in prejudice." *Stanley*, 420 S.W.3d at 549.

Thornton's first four points involve the performance prong of the test for ineffective assistance of counsel and his fifth and sixth points concern the prejudice prong. It is unnecessary to address plea counsel's competency because Thornton failed to establish prejudice. The Missouri Supreme Court recently decided a case similar to this one in *Stanley v. State*, 420 S.W.32d 532 (Mo. banc 2014). In *Stanley*, the defendant pleaded guilty to two counts of failure to register as a sex offender pursuant to a plea agreement with the State. *Id.* at 536. The maximum punishment on each count was four years imprisonment—or eight years imprisonment total if served consecutively. *Id.* The prosecutor promised to recommend a sentence of three years imprisonment on each charge, served concurrently, leaving the defendant free to ask the court for probation, and the prosecutor fulfilled that promise at sentencing. *Id.* The court did not

7

follow the recommendation and instead imposed two four-year sentences to run consecutively for the maximum eight-year sentence. *Id.* Thereafter, the defendant filed a Rule 24.035 motion for postconviction relief alleging, among other things, that plea counsel was ineffective for failing to adequately explain to him that the court was free to reject the plea agreement and impose a longer sentence. *Id.* at 538-39. The motion court denied the defendant's claim without an evidentiary hearing finding that the transcript of the plea colloquy refuted his claim. *Id.* at 539.

The Missouri Supreme Court affirmed finding that even if plea counsel was deficient for failing to provide an adequate explanation of the nonbinding nature of the plea agreement, the record refuted any claim that the defendant was prejudiced because the court provided him with an adequate explanation and assured that his guilty pleas were entered knowingly, voluntarily, and intelligently. *Id.* at 549. The Court noted that during the plea hearing, the plea court explained to defendant that it could impose the maximum penalty of eight years if he pleaded guilty; the plea court explained the charges and the defendant admitted supporting facts; the defendant affirmed the truth of a signed plea petition, which stated that the maximum sentence that the court could impose was four years imprisonment for each count and that the sentence was a matter within the court's control; and the plea colloquy tracked the requirements of Rule 24.02 governing pleas. *Id.* at 549-50.

While Stanley involved a claim of failing to adequately explain a plea agreement rather than affirmative misadvice about the plea agreement as in this case, its rationale is nevertheless applicable here. In either case, where the plea court corrects or clarifies inadequate or incorrect advice by counsel and the defendant acknowledges his understanding of the court's admonishments, the defendant is not prejudiced. Eighth Circuit precedent further supports such

8

analysis.  In *United States v. Quiroga*, 554 F.3d 1150, 1155 (8th Cir. 2009), the Eighth Circuit cited "abundant circuit precedent holding that inaccurate advice of counsel about the sentencing guidelines or likely punishment does not render involuntary a defendant's decision to plead guilty, so long as the defendant is informed of the maximum possible sentence permitted by statute and the court's ability to sentence within that range."  *See also Sangster v. United States*, 2011 WL 5374664 at *5 (E.D. Mo. 2011)("Generally, a movant cannot show he was prejudiced by counsel's inaccurate sentencing advice if, before pleading guilty, he was informed of the maximum possible sentence and the court's ability to sentence within that range.").

In this case, even assuming plea counsel misadvised Thornton that he would not receive a sentence longer than the prosecutor's recommendation and that if he did, he could withdraw his guilty plea, the record refutes any claim that Thornton was prejudiced because the plea court provided admonishments that corrected the advice of counsel and Thornton expressed an understanding of those admonishments.  After assuring that Thornton understood English, was not under the influence of drugs or alcohol, and was in good physical and mental health, the plea court explained the numerous rights he would waive by pleading guilty.  It then reviewed the range of punishment for the charges and explained that it could sentence him up to life imprisonment for felony murder and seven years imprisonment for DWI-aggravated offender and that the prison terms could run consecutively.  The plea court then explained the nature of the plea agreement and Thornton's inability to withdraw his plea.  Specifically, the court stated that if it did not follow the prosecutor's recommendation and if he were given more punishment than the recommendation, Thornton would not be able to withdraw his plea.  Thornton expressed his understanding of all of the court's admonishments.  Furthermore, Thornton acknowledged that he signed a written petition indicating that he understood everything on each page and the

9

petition's terms entirely.  The petition contained the maximum term of life imprisonment for felony murder.  Another paragraph of the petition specifically stated that Thornton understood that the court did not have to accept the prosecutor's recommendation and that it may assess punishment greater or lesser than the recommendation.  The plea court found that Thornton was guilty of the charges and that his pleas of guilty were made freely and voluntarily.  The motion court did not clearly err in denying Thornton's Rule 24.035 motion for postconviction relief because he was not prejudiced by plea counsel's alleged misadvice.  The points are denied.

The judgment of the motion court is affirmed.


_____
VICTOR C. HOWARD, JUDGE

All concur.